UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GARY J. AGUIRRE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-1872 (ESH) |
| ) | |
| SECURITIES AND EXCHANGE ) | |
| COMMISSION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Gary Aguirre has sued the Securities and Exchange Commission ("SEC"), his former employer, for unlawful disclosure of his records under the Privacy Act of 1974, 5 U.S.C. § 552a, for violating the Due Process Clause of the Fifth Amendment and for injunctive relief under the Privacy Act and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. (Second Am. Compl. ["Compl."] ¶¶ 1, 3.) Defendant now moves to dismiss plaintiff's due process claims, his claim for damages under the Privacy Act, and for partial dismissal of plaintiff's request for injunctive relief under the Privacy Act. For the reasons stated herein, the Court will dismiss plaintiff's due process claim based on his termination, stay his due process claim based on damage to his reputation and stay his Privacy Act claim for damages. The Court will not dismiss plaintiff's requests for records under the Privacy Act, with the exception of those requests he has voluntarily withdrawn.

**BACKGROUND**

As the tortured backdrop to this bitter dispute has already been thoroughly discussed by this Court in plaintiff's prior suit, *see Aguirre v. SEC*, 551 F. Supp. 2d 33, 38-47 (D.D.C. 2008) ("*Aguirre I*") and the Senate Committee on the Judiciary and the Senate Committee on Finance, *see* S. Rep. No. 110-28, at 1 (2007), the Court will limit itself to a discussion of the relevant allegations as set forth in plaintiff's second amended complaint.

**I. AGUIRRE'S HISTORY WITH THE SEC**

Aguirre was hired by the SEC as a Senior Counsel within its Division of Enforcement in July 2004.  (Compl. ¶¶ 9(A), 11.)  He received "consistently positive statements" from his supervisors, culminating in a two-step merit rating increase in July 2005.  (*Id.* ¶¶ 9(C), 10.) Aguirre and his supervisors came into conflict, however, when he pursued an investigation of suspicious trading activity at Pequot Capital Management ("Pequot") that implicated John Mack, the CEO of Morgan Stanley.  *Aguirre I*, 551 F. Supp. 2d at 38-40, 44-45.

In August 2005, the SEC began to "discredit, demean and disparage Plaintiff."  (*Id.* ¶ 13.) This culminated in plaintiff's termination on September 1, "just days before the end of his one-year probationary period."  *Aguirre I*, 551 F. Supp. 2d at 46.  Defendant distributed an evaluation of Aguirre stating that he "resisted supervision, was unaware of institutional protocol, failed to share information with other staff, had difficulty explaining the significance of evidence, and resented perceived attempts to thwart his success."  (*Id.* ¶ 13(A).)  Defendant informed others that Aguirre's supervisors had inadvertently failed to produce this evaluation to those responsible for approving his merit rating increase.  (*Id.* ¶ 13(B).)  It also publicly released a notice stating that plaintiff was fired because he was unable "to work effectively with other staff members," unwilling to follow the SEC process, "engaged in 'inappropriate' conduct," clashed with staff

attorneys and supervisors, "ignored the chain of command, resigned on multiple occasions, and rejected the guidance of his supervisors."  (*Id.* ¶ 13(C).)

Later, the SEC leaked statements to the press criticizing plaintiff's "competence, knowledge of SEC rules and regulations, ethics, professionalism, integrity, character, emotional stability and personality."  (*Id.* ¶¶ 13(D).)  Defendant also leaked threats to criminally prosecute plaintiff and other information relating to a suit it filed against him, implying that he had "engaged in some type of unspecified but unlawful conduct," and told the media he had improperly accessed agency e-mails, the agency website and SEC headquarters and had unlawfully taken agency records.  (*Id.* ¶¶ 13 (H)-(I), (K), (M).)  Finally, defendant "intimidat[ed]" SEC staff members believed to have "communicated" with plaintiff and displayed an eight-by-ten inch photo of plaintiff to visitors at SEC headquarters in Washington, D.C.  (*Id.* ¶¶ 13(G), (J).)  Plaintiff compares the photo to a "wanted picture at a post office . . . suggesting to visitors that [he] had engaged in some form of misconduct."  (*Id.* ¶ 13(G).)  Plaintiff alleges that defendant damaged his reputation, "rendering [it] valueless."  (*Id.* ¶ 14.)

In the aftermath, plaintiff filed a complaint with the SEC Chairman detailing "preferential treatment" of "Wall Street's elite" and accusing officials of firing him when he questioned the preferential treatment.  He petitioned Congress to investigate, filed Privacy Act and FOIA requests to gain access to records relating to his discharge and filed a whistleblower complaint.  (*Id.* ¶ 15.)  As a result of various favorable decisions from Congress, the Equal Employment Opportunity Commission ("EEOC"), the Office of Special Counsel and the SEC's Office of the Inspector General ("OIG"), the damage to plaintiff's reputation "was substantially mitigated, lessened and minimized."  (*Id.* ¶¶ 16-18.)

Plaintiff also states that damage was mitigated by this Court's decision in *Aguirre I*, filed on April 28, 2008.  (*Id.*)  *Aguirre I* found that the SEC had improperly claimed various FOIA exceptions to justify withholding certain documents requested by plaintiff.  551 F. Supp. 2d at 49-60.  It also held that the SEC had inadequately conducted its search and ordered the agency to produce evidence proving it had searched adequately or to conduct a second search.  *Id.* at 60.

Later in 2008, defendant appointed Brenda Murray, an SEC administrative law judge, to review the OIG's decision recommending discipline for the SEC's Director of Enforcement.  (*Id.* ¶ 20.).  On November 7, 2008, Murray issued a memorandum (the "Murray Report") that plaintiff alleges makes a variety of "false and misleading statements" designed to "distort and misstate the conclusions and findings" in the OIG's decision.  (*See id.* ¶ 21.)  Defendant's subsequent release of the memorandum to the media has "give[n] the false and misleading impression" that it was a "legitimate ruling," leading to media reports that plaintiff's allegations were groundless and that his firing had been legitimate.  (*Id.* ¶ 22-23.)

## II.  FOIA/PRIVACY ACT REQUESTS

On May 27, 2008, plaintiff submitted his first FOIA and Privacy Act request.  (Compl. ¶ 40.)  Under both FOIA and the Privacy Act, he sought all records prepared by the OIG after January 1, 2006, that related to its investigations of his firing and his allegations of SEC misconduct and all records relating to disclosure of information in his personnel file.  (*Id.* ¶¶ 40(4)-(8).)  Defendant has not produced any documents in response to this request.  (*Id.* ¶ 42.)

On November 24, 2008, plaintiff submitted a second request.  This time, under FOIA and the Privacy Act, he sought records relating to Murray's appointment, her communications with the SEC Chairman and any records Murray produced that related to his case.  (*Id.* ¶¶ 43(1)-(5).)  He also requested any written communications between Murray and other officials relating to

-4-

him or his case, any records on the "propriety, legality, potential conflicts, or statutory limitations on the capacity of Murray," and records of conversations between John Nester and the media about Murray's memorandum. (*Id.* ¶¶ 43(6)-(12).) Aguirre sought any writings in which he alleged that he had been retaliated against because of his brother's comments to the media or representation of "investors in a lawsuit against" the SEC chairman's former law firm (*id.* ¶ 43(13)), records relating to recusal by SEC officers (*id.* ¶ 43(14)) and press releases relating to any decision by SEC officials to "initiate or not initiate discipline" against SEC members. (*Id.* ¶¶ 43(15).) Finally, he requested records of "any personnel matter" in which an ALJ for the agency was an "initiating official" and anything the SEC had published in the Federal Register relating to the routine uses of records. (*Id.* ¶¶ 42(16, 18).) Plaintiff was told that the SEC could not process his request within twenty days and has received no other response. (*See id.* ¶ 45.)

On January 5, 2009, plaintiff submitted a third request under FOIA. (*Id.* ¶ 46.) He sought access to records relating to David Zilkha, a Microsoft employee who had spoken with Pequot employees prior to "suspicious trading" activity, *Aguirre I*, 551 F. Supp. 2d at 39-40, including a "proffer session" between Zilkha and the SEC and interviews with third parties who may have provided Zilkha with information. (*Id.* ¶¶ 46(1)-(4).) Plaintiff also requested records of a meeting held on April 3, 2006, between SEC staff and attorneys for Pequot and Arthur Samberg, records relating to a June 1, 2006 meeting between SEC staff and two Goldman Sachs employees and testimony or interviews in an investigation of trading in Microsoft stock. (*Id.* ¶¶ 46(5)-(8).) Defendant informed plaintiff that it was withholding responsive records under FOIA exemption 552(b)(7)(A). (*Id.* ¶ 47.)

## III. THE INSTANT CASE

Plaintiff filed his original complaint on October 29, 2008, and his second amended complaint on April 1, 2009.[1] He alleges that defendant violated the Due Process Clause by firing him without a hearing and by damaging his reputation. He also alleges that restoring his reputation and minimizing the harm caused by defendant will result in more fees and costs. (*Id.* ¶ 29.) He has suffered "emotional distress, illness, physical injury" and harm to his reputation and has spent seventy hours a week "as one of his own attorneys and his own investigator." (*Id.* ¶ 30.) He also alleges that defendant violated the Privacy Act by failing to release the records that he requested on May 27, 2008 and on November 24, 2008. (*Id.* ¶¶ 52-53.) Finally, he alleges that defendant violated FOIA by failing to release the records he requested in May 2008, November 2008 and January 2009. (*Id.* ¶¶ 56-58.) Plaintiff asks the Court to award him damages, costs and attorneys' fees; to order the SEC to hold a hearing to protect his reputation and to search for and release all the records he requests; and to hold that the SEC violated FOIA and the Privacy Act. (*Id.* at 26-27 (prayer for relief).)

---

[1] Plaintiff also has a case pending before the Merit Systems Protection Board ("MSPB") (Compl. ¶ 16(D)), in which he alleges that he was wrongfully terminated from the SEC in retaliation for his whistleblowing activities.

## ANALYSIS[2]

### I.  STANDARD OF REVIEW

"In determining whether a complaint fails to state a claim, [courts] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] . . . matters of which [courts] may take judicial notice," *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997), including "public records," and documents "appended to [a] motion to dismiss and whose authenticity is not disputed" if they are "referred to in the complaint and are integral" to plaintiff's claim.  *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).[3]

When ruling on a Rule 12(b)(6) motion to dismiss, courts may employ a "two-pronged approach."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  Courts must first assume the veracity of all "well-pleaded factual allegations" in the complaint.  *Id.*  Courts need not accept as true "'naked assertion[s]' devoid of 'further factual enhancement,'" *id.* at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)), or "legal conclusions cast in the form of factual

---

[2] Plaintiff has submitted a motion to file a rambling surreply in addition to his Opposition.  (Pl.'s Mot. to File Sur-Reply; Pl.'s Sur-Reply to Def.'s "Reply" Memo.)  "A surreply may be filed only by leave of Court, and only to address new matters raised in a reply to which a party would otherwise be unable to respond."  *United States ex rel. Pogue v. Diabetes Treatment Ctrs. Of Am., Inc.*, 238 F. Supp. 2d 270, 276-77 (D.D.C. 2002).  "A surreply is most appropriate where the new matter introduced is factual."  *Id.* at 277.  Plaintiff introduces no new matters in his surreply and only rehashes old arguments.  The Court will therefore deny plaintiff's motion to file a twenty-four page pleading inaccurately described as a surreply.

[3] Defendant's motion to dismiss includes the Murray Report as an exhibit.  (Def.'s Mot., Report of Initiating Official on Administrative Process ["Murray Report"], Ex. 1.)  Because plaintiff's complaint refers frequently to the Murray Report (*see, e.g.*, Compl. ¶¶ 20-22.) and his claim depends upon its contents, it is integral to plaintiff's defamation claim and to his FOIA and Privacy Act requests (*see id.* ¶¶ 33-34, 40-43), and its authenticity is undisputed, the Court is entitled to consider it without converting defendant's motion into a motion for summary judgment.  *See Kaempe*, 367 F.3d at 965; *Navab-Safavi v. Broad. Bd. of Governors*, No. 08-1225, 2009 WL 2849069, at *10 n.5 (D.D.C. Sept. 3, 2009).

allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  A pleading must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' . . . ." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

Once the court has determined that there are well-pleaded factual allegations, it must determine whether the allegations "plausibly give rise to an entitlement to relief" by presenting "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" such that "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570).  Merely pleading facts "consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949.

## II.  DUE PROCESS

### A.  Right to a Pre-Termination Hearing

Plaintiff alleges that defendant violated his right to due process of law by firing him without a hearing.  (Compl. ¶ 34.)  Defendant argues that plaintiff was a probationary employee[4] (Def.'s Mot. to Dismiss in Part ["Def.'s Mot."] at 7), and he therefore had no right to a pre-termination hearing.  Aguirre has failed to allege a due process violation of a property interest in his employment.  His "status as a probationary employee is a large hurdle for [him] to clear in order to establish a property interest" because "[p]robationary employment is ordinarily considered employment at will." *Piroglu v. Coleman*, 25 F.3d 1098, 1104 (D.C. Cir. 1994) (holding that a probationary employee had no due process right to a pre-termination hearing). Government employees "who are terminable at will have no property interest because there is no objective basis for believing that they will continue to be employed indefinitely." *Hall v. Ford*,

---

[4] Although he does not explicitly state that he was a probationary employee, plaintiff does not contest this fact.  (*See* Pl.'s Opp'n at 12-13.)

856 F.2d 255, 265 (D.C. Cir. 1988).  Pursuant to these binding authorities, plaintiff cannot claim any property interest under the Fifth Amendment in a hearing prior to his termination, and this due process claim will be dismissed with prejudice.

### B.  Right to a Name-Clearing Hearing

Plaintiff alleges that defendant injured his reputation and thereby violated his right to due process of law by terminating him, distributing the Murray Report, which "severe[ly] damage[d]" his "good name, reputation, honor and integrity," and otherwise damaging his reputation.  (Compl. ¶¶ 32-34.)  As a matter of law, "persons whose future employment prospects have been impaired by government defamation 'lack . . . any constitutional protection for the interest in reputation.'"  *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 643 (D.C. Cir. 2003) (quoting *Siegert v. Gilley*, 500 U.S. 226, 234 (1991)).  Courts have created two general exceptions to this rule, allowing "reputation plus" claims and "stigma or disability" claims.  *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573-78 (1972)).

A plaintiff states a "reputation plus" claim by alleging official defamation in conjunction with a "change in status," such as termination or demotion.  Some official action is necessary because "government defamation" alone is "insufficient to create a liberty interest" under the Due Process Clause.  *Orange v. District of Columbia*, 59 F.3d 1267, 1274 (D.C. Cir. 1995).  Courts have "presumably" allowed these types of actions because "official criticism will carry much more weight if the person criticized is at the same time demoted or fired."  *O'Donnell*, 148

F.3d at 1140. A "reputation-plus" claim thus requires a "conjunction of official defamation and adverse employment action."[5] *Id.*; *Holman v. Williams*, 436 F. Supp. 2d 68, 79 (D.D.C. 2006).

A "stigma or disability" claim must be based on official government action that has "the broad effect of largely precluding [plaintiff] from pursuing [his] chosen career." *Kartseva v. Dep't of State*, 37 F.3d 1524, 1528 (D.C. Cir. 1994) (emphasis omitted). The action must "seriously affect[], if not destroy[]" plaintiff's ability to seek employment in his field or "substantially reduce[] the value of his human capital." *O'Donnell*, 148 F.3d at 1141 (internal quotations and citations omitted). Thus, unlike a "reputation-plus" claim, a "stigma or disability" claim does not depend on defamatory statements. *See Holman*, 436 F. Supp. 2d at 80. Rather, plaintiff must establish that defendant "altered" his status "in a tangible way," *U.S. Info. Agency v. Krc*, 905 F.2d 389, 397 (D.C. Cir. 1990) and that a stigma "flowed from" or occurred "in conjunction with" this change. *O'Donnell*, 148 F.3d at 1141. Defamation must be "incident to" the change in status to be relevant. *See Siegert,* 500 U.S. at 234; *see also Holman*, 436 F. Supp. 2d at 80 (holding that a newspaper article published the day after plaintiff was fired could cause a "stigma or disability" where it "effectively put a significant roadblock in [plaintiff's] ability to obtain other employment"). *But see Peter B. v. CIA*, 620 F. Supp. 2d 58, 73-74

---

[5] Although not raised by the parties, it should be noted that in this Circuit a reputation-plus claim cannot be based on defamation related to plaintiff's job performance. The government must defame characteristics which are "inherent or at least . . . persistent personal condition[s], which both the general public and a potential future employer are likely to want to avoid," rather than "situational" problems, like "[i]nadequate job performance." *Harrison v. Bowen*, 815 F.2d 1505, 1518 (D.C. Cir. 1987). *See also Holman*, 436 F. Supp. 2d at 79 (quoting *Alexis v. District of Columbia*, 44 F. Supp. 2d 331, 339 (D.D.C. 2006)) (holding that "statements clearly speak[ing] only to plaintiff's job performance" were insufficient to state a reputation-plus claim). Thus, public dismissal for "dishonesty, for having committed a serious felony, for manifest racism, for serious mental illness, or for lack of 'intellectual ability'" is sufficient to state a "reputation-plus" claim. *Harrison*, 815 F.2d at 1518 (quoting *Mazaleski v. Treusdell*, 562 F.2d 701, 714 (D.C. Cir. 1977)). *See also Holman*, 436 F. Supp. 2d at 72, 79 (holding that statements that a plaintiff failed to interact with his staff and that his office was in "total chaos" do not "rise to the level of constitutional harm" because they relate to his job performance).

(D.D.C. 2009) (holding that defamatory statements alone could only be the basis of a "stigma or disability" claim where they "reflected an underlying determination of [plaintiff's] clearance eligibility"). Thus, the "stigma or disability" must be caused either by the government's action or by statements contemporaneous with that action.

Plaintiff agrees with defendant that the remedy he seeks is a "name-clearing hearing" before the SEC.[6] (Pl.'s Mem. of P. & A. in Opp'n to Def.'s Mot. ["Pl.'s Opp'n"] at 12; Def.'s Reply in Support of Its Mot. ["Def.'s Reply"] at 5.)  Where a plaintiff establishes all the required elements of a claim for damage to reputation, under either the "reputation-plus" or "stigma or disability" theory, "the remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge,'" which will "'provide the person an opportunity to clear his name.'"  *Codd v. Velger*, 429 U.S. 624, 627 (1977) (quoting *Roth*, 408 U.S. at 573 & n.12); *see also Peter B.*, 620 F. Supp. 2d at 71 (noting that in the context of due process liberty claims, "the well-settled remedy is a name-clearing hearing" (quoting *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985))).  At the hearing, plaintiff must "challenge the substantial truth of the material in question."  *Id.* at 628.

Although defendant concedes that plaintiff "may" have stated the elements of a due process claim for damage to his reputation (Def.'s Reply at 3 n.3.), it argues that plaintiff cannot state a due process claim for statements it made when he was fired because he has already had all the "process" due, obviating the need for any hearing.  (*Id.* at 3-4.)  Where "defendants can establish that [a prior decision's] curative effect on the injuries to plaintiff's good name and employment opportunities is as great as that of any hearing this Court could order, then the need

---

[6] Although the district court must indicate "the type of name-clearing hearing the [agency] must conduct," it is presumed to be the agency's responsibility to hold the hearing. *Lyons v. Barrett*, 851 F.2d 406, 410-11 (D.C. Cir. 1988).

for a remedial hearing would be obviated." *Harper v. Blumenthal*, 478 F. Supp. 176, 189-90 (D.D.C. 1979). Defendant argues that the Senate Report and OIG investigations have already provided plaintiff with adequate process. However, at this early stage of litigation, defendant has not established that there has been a decision with a "curative effect . . . as great as that of any hearing this Court could order" so as to "obviate[]" the need for a remedial hearing. *See id.* (noting that defendant would need to establish the curative effect of any prior hearing). Thus, it cannot be said as a matter of law that plaintiff has already had all the process he is due.

However, plaintiff's case before the MSPB may provide him with the required opportunity to refute defendant's charges and to clear his name. A "hearing before the MSPB" can provide "an adequate opportunity to address the charges against [plaintiff] and to clear [his] name." *Gibbs v. Brady*, 773 F. Supp. 454, 457 (D.D.C. 1991) (holding that a MSPB hearing and ALJ recommendation in plaintiff's favor mooted her request for a name-clearing hearing). The Court will therefore stay plaintiff's due process claims for damage to his reputation under either the "reputation-plus" or "stigma or disability" theory, pending the outcome of his litigation before the MSPB. *See Macktal v. Garde*, No. 82-2533, 1992 WL 119113, at *2 (D.D.C. May 11, 1992) ("It is clear that a district court has authority to stay an action before it in order to allow a related administrative action, which is potentially dispositive of all or some of the issues in the judicial proceeding, to reach a resolution.").

## III. PRIVACY ACT

### A. Requests for Documents

The Privacy Act requires agencies that "maintain[] a system of records" to permit "any individual to gain access to his record or to any information pertaining to him which is contained in the system." 5 U.S.C. § 552a(d). A "system of records" is a "group of any records under the

control of any agency from which information is retrieved by the name of the individual or . . . other identifying particular assigned to the individual." *Id.* § 552a(a)(5). A record is defined as "any item, collection, or grouping of information about an individual that is maintained by an agency." *Id.* § 552a(a)(4). "For an assemblage of data to qualify as one of [plaintiff's] records," and therefore be "subject to disclosure based on his § 552a(d)(1) request," it must not only contain his name or other identifying particulars but also be 'about' him." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1121 (D.C. Cir. 2007). Thus, plaintiff is only entitled to records that "actually describe him in some way." *Id.* (citing *Tobey, v. NLRB*, 40 F.3d 469, 472 (D.C. Cir. 1994)).

Defendant argues that it properly refused plaintiff's Privacy Act requests to the extent he sought records about other people. (Def.'s Mot. at 11.) Specifically, it argues that plaintiff's May 27 request for records relating to the investigation of John Mack and potential violations of 18 U.S.C. § 1001 and his November 24 requests relating to the decision to appoint Murray are invalid because the records are not "about" plaintiff.[7] (*Id.* at 13-14 (citing *Lapka v. Chertoff*, No. 05-CV-668, 2006 WL 3095668, at *7 (N.D. Ill. Oct. 30, 2006)). Defendant does not contest plaintiff's January 5 requests, as they were not made under the Privacy Act. (Compl. ¶ 46.) Plaintiff now agrees to withdraw all Privacy Act claims related to his May 27 request (Compl. ¶ 40), as well as November 24 requests (15), (16) and (18). (Pl.'s Opp'n at 4, 24 n.91.) However, plaintiff argues that the rest of his November 24 requests were valid under the Privacy Act and suggests that defendant has failed to address the "central issue: are the records in dispute in files retrievable by Plaintiff's name?" (Pl.'s Opp'n at 25.)

---

[7] Plaintiff's complaint refers to sixteen different requests for records contained in the November 24 letter. (Pl.'s Compl. ¶ 43.) The complaint numbers them (1)-(18), with numbers (11) and (17) omitted. (*Id.*) To avoid further confusion, the Court will refer to the requests using plaintiff's numbering system.

Defendant seeks dismissal of requests (3), (4) and (5), suggesting that because the records sought are about OIG's investigation into plaintiff's termination, they cannot also be about plaintiff.[8] (Def.'s Mot. at 13-14.) This interpretation of the "about" requirement is incompatible with the requirement that records need only contain plaintiff's name and "describe plaintiff in some way."[9] *See Sussman*, 494 F.3d at 1121. Plaintiff seeks records of an investigation of his allegation that the SEC "fired [him] for questioning" the decision to give "preferential treatment to one of Wall Street's elite." (Compl. ¶¶ 15(A), 43(3)-(5).) Plaintiff has therefore alleged that the records describe the reasons for his termination. It is, at the very least, plausible that these records will describe him in some way. Therefore, requests (3), (4) and (5) will not be dismissed.

Defendant also seeks dismissal of requests (1), (2), (10), (12), (14), (15), (16) and (18) on the grounds that plaintiff did not allege that these records were about him. (Def.'s Mot. at 14-15.) It also argues that requests (6)-(9) should be dismissed to the extent they seek records about individuals other than plaintiff. Plaintiff has "withdraw[n]" requests (15), (16) and (18) (Pl.'s Opp'n at 24 n.91), but argues that he is entitled to the other records. Defendant is correct that plaintiff may only have access to records that are "about" him (*i.e.*, that contain his name and describe him in some way). However, given plaintiff's factual allegations, the Court cannot say as a matter of law that the records he seeks will not describe him in some way. To the extent that

---

[8] Defendant cites two district court cases to support this proposition. (Def.'s Mot. at 13 (citing *Lapka*, 2006 WL 3095668, at *7; *Logan v. Dep't of Veteran's Affairs*, 357 F. Supp. 2d 149, 154 (D.D.C. 2004)). However, *Logan* and *Lapka* were published before the Court of Appeals decided *Sussman* and therefore do not rely on *Sussman's* test for determining whether a record is about the plaintiff. *See Logan*, 357 F. Supp. 2d at 154; *Lapka*, 2006 WL 3095668, at *7.

[9] For the same reason, the Court cannot adopt plaintiff's proposition that the only issue is whether the records sought are "retrievable" by his name. (Pl.'s Opp'n at 25.)

these records are "about" plaintiff, he is entitled to "gain access" to them.[10]  Therefore, only requests (15), (16) and (18) will be dismissed.

Defendant also argues that the Murray Report is not about the plaintiff.  (Def.'s Reply at 11-12.)  However, the Murray Report sufficiently describes plaintiff to satisfy the standard established by *Sussman.  See* 494 F.3d at 1121.  The Report deals directly with Aguirre's termination, asking: "Did the Commission's Enforcement Division improperly terminate Aguirre in retaliation for his complaints about preferential treatment of Mack and to block his efforts to take Mack's testimony?"  (Murray Report at 11.)  Further, the Report states that plaintiff's first supervisor "thought he should have been fired within four months" and quotes Hanson's statement that "Aguirre was creating chaos with [outside] counsel; he did not seem to be organized; and he was sometimes in tears and sometimes angry."  (Murray Report at 12 n.6.)  The Report clearly contains plaintiff's name and describes him, his history at the SEC and details related to his termination.  As it contains both plaintiff's "name or other identifying particulars" and "actually describe[s] him in some way," the Murray Report appears to be covered by the Privacy Act.  *See Sussman*, 494 F.3d at 1121. Plaintiff's request for "communications" between John Nester and the media about the Murray Report therefore will not be dismissed.  (Compl. ¶ 43(12).)

### B. Claims For Damages

The agency suggests that because this case overlaps with plaintiff's previously-filed case before the MSPB and because the accuracy of the documents is "intertwined" with plaintiff's termination, the Court should stay or dismiss these claims and allow the MSPB to decide the

---

[10] Defendant does not contest that requests (6), (7), (8) and (9) are valid to the extent they "pertain to" Aguirre.  (Def.'s Mot. at 15.)

merits of the employment claims.[11]  (Def.'s Mot. at 18-19; Def.'s Reply at 16-18.)  Defendant first argues for dismissal based on the "first-filed rule" (Def.'s Mot. at 18), a rule of "judicial economy" that applies where "parallel cases involve the same subject matter."  *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349-50 (D.C. Cir. 2003).  However, the Court of Appeals has "emphasized that the district court must balance equitable considerations rather than using a mechanical rule of thumb" like the first-filed rule.  *Id.* at 350 (internal quotation marks omitted).  Moreover, as plaintiff points out (Pl.'s Opp'n at 6), the rule applies when issues arising out of the same "transaction" are litigated in two separate *district courts*.  *See id.* (noting that the court should "decide[] which district court should adjudicate the case").

In the alternative, defendant suggests the Court stay plaintiff's Privacy Act claims for damages.  (Def.'s Reply at 16-18.)  There is "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737 (3rd Cir. 1983) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936)); *see also Macktal*, 1992 WL 119113, at *2.  *Hufstedler* approved a "moderate and actively monitored stay" in a school desegregation case, in the hopes that an "appropriate solution for at least some of the difficult problems [would] be obtained more readily through the flexibility of the administrative process."  *Id.* at 738.  At least *some* of plaintiff's Privacy Act claims in this case will depend upon the resolution of his claim before the MSPB.  (Def.'s Reply at 16-18.)  The Court will therefore stay plaintiff's Privacy Act claims for damages pending the resolution of his claim for wrongful termination before the MSPB.

---

[11] Defendant also argues that plaintiff should not be allowed to do an "end-run" around the Civil Service Reform Act ("CSRA") by filing a claim under 5 U.S.C. § 552a(g)(1)(C), which allows plaintiffs to contest the accuracy of agency records.  (Def.'s Mot. at 17-18.)  As plaintiff has not brought a claim under (g)(1)(C), the Court need not address this argument.  (Pl.'s Opp'n at 3.)

-17-

## CONCLUSION

For the foregoing reasons, the Court will grant defendant's motion to dismiss plaintiff's due process claim based on his termination. The Court will stay plaintiff's due process claim based on injury to his reputation, pending the outcome of his proceedings before the MSPB. The Court will dismiss plaintiff's Privacy Act requests made on May 27, 2008, listed in paragraph 40 of his complaint and Privacy Act requests (15), (16) and (18), made on November 24, 2008. (Compl. ¶¶ 40, 43.) Finally, the Court will stay plaintiff's claims for damages under the Privacy Act pending the resolution of his case before the MSPB. An Order consistent with this Memorandum Opinion is also being issued this date.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date: December 2, 2009